**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CIVIL ACTION** |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | **No. 16-6464** |
| : | |
| **ELIZABETH PASCARELLI STONICH,** : | |
| : | |
| **Defendant.** : | |

## ORDER

**AND NOW**, this 2nd day of January, 2018, upon consideration of Plaintiff's "Motion for Service by Posting Property and Certified Mail" (Doc. No. 9) and "Motion to Extend Time to Make Service" (Doc. No. 10), I find as follows:

FACTUAL & PROCEDURAL BACKGROUND

1. On December 15, 2016, Plaintiff, the United States, filed its Complaint in this action against Defendant, Elizabeth Pascarelli Stonich, seeking to collect on a student loan. (Compl., Doc. No. 1.)

2. Plaintiff sent a waiver of service to Defendant shortly after filing the Complaint. The waiver was not returned executed. (Pl.'s Mot. to Extend Time to Make Service, Doc No. 10, ¶ 3.)

3. Then, on January 25, 2017, a private process server attempted personal service at Defendant's last known address, 320 Conestoga Road, Wayne, Pennsylvania, 19087 (hereinafter "the Wayne Property"). In his affidavit, the process server noted that the Wayne Property appeared vacant. (Pl.'s Mot. for Service, Doc. No. 9 (cited hereinafter as "Pl.'s Mot."), Ex. A.)

4. Plaintiff then undertook an investigation to locate Defendant. The investigation revealed another possible address for Defendant: 2 Prospect Street, Nantucket, Massachusetts, 02554-2704 (hereinafter "the Nantucket Property"). (Pl.'s Mot., Ex. B.)

5. A private process server attempted personal service at the Nantucket Property on six occasions. The first three attempts in February 2017 were unsuccessful. Three more attempts were made in April 2017. During these later attempts, the occupant told the process server that Defendant had not resided there in the previous two years. (Pl.'s Mot., Exs. C-D.)

6. Plaintiff then undertook a second investigation, which revealed another possible address for Defendant: 6203 27th Avenue NE, Seattle, Washington, 98115 (hereinafter "the Seattle Property"). (Pl.'s Mot., Ex. E.)

7. On May 11, 2017, a private process server attempted personal service at the Seattle Property. The occupant told the process server that the Seattle Property is the Defendant's son's residence and that Defendant visits "from time to time," but is "currently in Spain." (Pl.'s Mot., Ex. F.)

8. On June 9, 2017, Plaintiff filed the instant motions, seeking to extend the time to effect service under Federal Rule of Civil Procedure 4(m)[1] and to effect service by alternative means. Specifically, Plaintiff seeks to effect service by posting a copy of the Summons and Complaint at Defendant's last known address (i.e., the Wayne

---

[1] Plaintiff's deadline to effect service under Federal Rule of Civil Procedure 4(m) was initially March 15, 2017. I have extended that deadline on three previous occasions, at Plaintiff's request, noting Plaintiff's efforts to serve Defendant. Plaintiff filed the instant motion to extend time on June 9, 2017—prior to the June 16 deadline for service set by my last Order. (See Doc. Nos. 2-8, 10.)

Property), as well as by mailing a copy of the same to the Wayne Property by certified mail. (Pl.'s Mot., 1.)

LEGAL STANDARD

9. "[C]onstitutional due process requires that service of process be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Calabro v. Leiner, 464 F. Supp. 2d 470, 471 (E.D. Pa. 2006) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

10. While there is no federal rule providing for alternative service, Federal Rule of Civil Procedure 4(e)(1) permits service to be made pursuant to the law of the state in which the district court sits or where service is made. Thus, the Complaint in this action may be served in a manner consistent with Pennsylvania law.

11. Pennsylvania Rule of Civil Procedure 430(a) provides that a plaintiff may move for an order permitting alternative service where personal service cannot be made:

> If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made.

12. Thus, alternative service under Rule 430(a) is "only appropriate as a last resort when personal service cannot be made." See United States v. Linares, No. 16-cv-4463, 2016 WL 7014192, at *1 (E.D. Pa. Nov. 30, 2016) (internal quotation marks omitted).

13. While Rule 430(a) itself does not provide a standard for determining whether or not personal service can be made, courts in this district have consistently held that a plaintiff moving for alternative service under Rule 430(a) must demonstrate that: "(1)

it made a good faith effort to locate the defendant; (2) it made practical efforts to serve her under the circumstances; and (3) its proposed alternate means of service is reasonably calculated to provide the defendant with notice." <u>Id.</u>

14. As to the first requirement—a good faith effort to locate the defendant—the note to Rule 430(a) provides "an illustration" of such an effort, noting that it "includes (1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act; (2) inquiries of relatives, neighbors, friends, and employers of the defendant; (3) examinations of local telephone directories, courthouse records, voter registration records, local tax records, and motor vehicle records; and (4) a reasonable internet search." While "it is not necessary that [the] plaintiff pursue every method listed in the note to Rule 430(a) in order to satisfy the good faith effort requirement," <u>Calabro</u>, 464 F. Supp. 2d at 472, "[u]nless [the] plaintiff uses most of these methods to locate the defendant, [it] will be unable to demonstrate that [it] has made a good faith effort," <u>United States v. Smith,</u> No. 16-cv-5650, 2017 WL 395486, at *1 (E.D. Pa. Jan. 30, 2017).

15. As to the second requirement—practical efforts to serve a defendant once she has been located—a plaintiff must "[g]enerally . . . make multiple attempts to serve a defendant in order to demonstrate that alternative service is necessary." <u>Linares</u>, 2016 WL 7014192, at *2. "As many as six repeated attempts at service and a stakeout may be necessary to demonstrate that all practical efforts were made . . . ." <u>Id.</u>

ANALYSIS

Whether Plaintiff Has Made a Good Faith Effort to Locate Defendant

16. While Plaintiff's previous efforts to locate Defendant are not insubstantial, the record suggests that Plaintiff has "left several stones unturned," such that alternative service should be denied without prejudice at this time. Johnson v. Jackson, No. 03-cv-5737, 2004 WL 73729, at *1 (E.D. Pa. Jan. 6, 2004) (denying a motion for alternative service, even though the plaintiff had attempted several of the procedures suggested by the note to Rule 430(a)).

17. To be sure, Plaintiff has searched many of the types of records indicated in the note to Rule 430(a): Plaintiff's counsel affirms in an affidavit that Plaintiff has made "inquiries of postal authorities, including inquiries pursuant to the Freedom of Information Act," as well as undertaken an "examination of local telephone directories," and "a search of the docket of the Delaware County Court of Common Pleas."[2]  (Aff. of Rebecca A. Solarz, Doc. No. 9-1, ¶¶ 2, 13.)

18. Plaintiff has also submitted two affidavits from its investigators, outlining the efforts they made during two separate investigations—one conducted in or around February 2017, and the other in or around April 2017. The affidavit for the first investigation lists a number of general categories of record inquiries, such as "Employment Search," "Business Records Search," "Creditor Header Inquiry," and "Department of Motor Vehicle Records Search." The second affidavit similarly lists categories of inquiries into records databases, noting that the investigator searched "[i]nvestigative

---

[2] The Wayne Property is located within Delaware County.

database sources," as well as "King County Washington property records." (Pl.'s Mot., Exs. B, E.)

19. These efforts did bear some fruit: Plaintiff discovered two more possible locations for Defendant, the Nantucket Property and the Seattle Property. And through its search of Delaware County court records, Plaintiff learned that there is an open ejection action regarding the Wayne Property, and that Defendant's husband filed a response to that action, indicating that he was the "sole occupant" of the Wayne Property.[3] (Pl.'s Mot., Exs. B, E, G.)

20. However, Plaintiff's efforts with regard to another set of inquiries identified in the note to Rule 430(a)—inquiries of relatives, neighbors, friends, and employers— appear to be incomplete. Such personal inquiries are significant because, as courts have noted, Rule 430(a) requires "more than a mere paper search." Deer Park Lumber, Inc. v. Major, 559 A.2d 941, 946 (Pa. Super. 1989).

21. While Plaintiff's investigations located two of Defendant's close relatives—her husband and her son—the record does not demonstrate that significant efforts were made to obtain information from them about her location.

22. Plaintiff's first investigation, in February 2017, identified a telephone number for "Peter Pascarelli," the name of Defendant's husband. The investigator called the number and left a voice mail, but, as far as the record indicates, never attempted another call. And the record does not reflect any further efforts to contact Defendant's husband by any other means, such as through his attorney—who is specifically

---

[3] Plaintiff notes that it also located a divorce action between Defendant and her husband, though the divorce was not final as of June 2017, when Plaintiff filed the instant motions. (Pl.'s Mot., Ex. H.)

identified in Defendant's husband's response to the ejection action. (Pl.'s Mot., Exs. B., G.)

23. Plaintiff's second investigation, in April 2017, further revealed the residence of Defendant's son: the Seattle Property. Not only did the process server who attempted to serve Defendant there learn that it is the Defendant's son's residence, but also learned that Defendant occasionally visits there, and that Defendant was—as of that time—in Spain. However, the record does not demonstrate that Plaintiff ever followed up on this information by, for example, attempting to obtain from Defendant's son an address in Spain (or in the United States) at which Defendant could receive mail, or an email addresses or telephone number for Defendant. (Pl.'s Mot., Ex. F.)

24. While it may well be that Defendant's son and husband would not have provided any information that would have assisted Plaintiff in locating Defendant, the record here does not show that Plaintiff made any requests for this information.

25. Plaintiff's efforts to contact Defendant's neighbors appear equally incomplete. The second investigation identified at least three neighbors of the Wayne Property and three neighbors of the Seattle Property. Plaintiff's investigator appears to have placed calls to each of these neighbors but spoke with only one, who "advised he is not familiar with [Defendant]." As to the other five neighbors, Plaintiff's investigator merely indicated that she reached an answering machine, not whether she left a message or whether she ever attempted to call again. (Pl.'s Mot., Ex. E.)

26. Nor is there any indication that the investigator ever attempted to stake out the neighborhood surrounding the Wayne or Seattle Properties. Indeed, unlike the

Nantucket Property, which a process server visited six times, a process server visited the Wayne and Seattle Properties only once. (Pl.'s Mot., Ex. A.)

27. Accordingly, I cannot conclude, based on the record before me now, that Plaintiff has made a good faith effort to locate Defendant.

<u>Whether Plaintiff Has Made Practical Efforts to Serve Defendant and Whether the Proposed Method of Service is Reasonably Calculated to Notify Defendant</u>

28. Because I cannot find that Plaintiff has made a good faith effort to locate Defendant, I need not consider whether Plaintiff has made practical efforts to serve Defendant or whether Plaintiff's proposed method of service is reasonably calculated to provide notice to Defendant.

29. However, because I will provide Plaintiff an opportunity to renew its Motion for Alternative Service should the efforts to locate Defendant set out above not be successful, I emphasize for purposes of Plaintiff's future filings that its proposed alternative method of service must be reasonably calculated to provide Defendant notice in light of the information learned in its investigation. Specifically, I note that Plaintiff's investigation appears to have conclusively revealed that Defendant does not reside at the Wayne Property (which the process server found to be vacant) and that no change of address for the Wayne Property is on file with the United States Postal Service. (<u>See</u> Pl.'s Mot., Exs. A-B.) Accordingly, Plaintiff should consider whether service by posting and mailing to this residence is reasonably calculated to provide notice to Defendant. <u>See, e.g.</u>, <u>Johnson v. Berke Young Int'l, LLC</u>, No. 07-cv-2240, 2007 WL 3010531, at *2 (E.D. Pa. Oct. 12, 2007) (holding that the plaintiff's proposal to "mail the summons and complaint to Defendants' last known

addresses" was not reasonably calculated to provide these defendants with notice, given that the plaintiff "ha[d] already attempted, unsuccessfully, to serve Defendants at their last known addresses").

<u>Extension of Time for Service</u>

30. Plaintiff also requests additional time in which to make service pursuant to Federal Rule of Civil Procedure 4(m). (Pl.'s Mot. to Extend Time, Doc. No. 10.)

31. While Rule 4(m) requires that service be made "within 90 days after the complaint is filed," the rule provides that a court "must extend the time for service for an appropriate period" if the plaintiff "shows good cause for the failure" to serve the defendant within the time previously provided.

32. In light of the efforts that Plaintiff has, thus far, made to locate and serve Defendant, I conclude that Plaintiff has demonstrated good cause for the failure to effect service within the time period set by my previous Order extending the time for service. Accordingly, I will extend Plaintiff's time to effect service by thirty (30) days from the date of this Order, to afford Plaintiff an opportunity to make additional efforts to locate and serve Defendant, including those efforts discussed above.

**WHEREFORE**, it is hereby ordered that:

- Plaintiff's "Motion for Service by Posting Property and Certified Mail" (Doc. No. 9) is **DENIED WITHOUT PREJUDICE**. Plaintiff may renew this motion should its additional efforts to locate and serve Defendant, including those discussed above, fail.

- Plaintiff's "Motion to Extend Time to Make Service" (Doc. No. 10) is **GRANTED**. Plaintiff shall effectuate service within thirty (30) days from the date of this Order.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**

_____

**MITCHELL S. GOLDBERG, J.**